### UNITED STATES of America

v.

### William KLOSE, Frank Weissinger.

### Crim. Nos. 80–00210, 80–00211.

United States District Court,
E.D. Pennsylvania.

Dec. 23, 1982.

Michael L. Levy, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Donald Joel, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, Chief Judge.

Defendants have appealed to this court from a federal magistrate's entry of a judgment of guilty following a July 1980 nonjury trial of criminal contempt charges. I stayed consideration of these appeals awaiting resolution of certain of the issues by the court of appeals for the third circuit in a companion case then recently appealed. After the court of appeals' opinion was published in October, 1982, I made repeated attempts, by telephone and letter, to contact defendants' attorney. When these ef-

forts were unsuccessful, I contacted defendants directly. Defendant Klose responded by telephone and stated his intention to appear *pro se* and argue his appeal. I scheduled argument for December 17, 1982 and notified all concerned. Neither counsel for the defendants nor the defendants themselves appeared. The Assistant United States Attorney argued the only remaining issue.

Because appellate briefs were submitted in this case in 1981, I will dispose of the matter on the merits rather than dismiss the appeals for lack of prosecution.

The charges against defendants arose from the controversy surrounding the Whitman Park Townhouse Project in Philadelphia. A low-income housing project had been planned in the Whitman area of South Philadelphia for many years, but community opposition had prevented it from being built. In 1976, the United States District Court (Broderick, J.) directed city and federal authorities to take all necessary steps for the construction of the housing project.

When neighborhood residents began interfering with construction, the district court issued a temporary restraining order on March 14, 1980, and a permanent injunction on April 1. The court order enjoined the Whitman Area Improvement Council, the Whitman Council, Inc., their members, several named individuals and "all other persons acting in concert with them or otherwise participating in their aid" from obstructing work on the townhouses and from protesting and picketing at the construction site except in the manner specified in the order.

On the morning of June 3, 1980, a large crowd gathered in the prohibited area of the construction site. The United States Marshal arrived at the site and shortly thereafter made an announcement to the crowd over a police bullhorn. The marshal informed those assembled that they were in violation of the injunction and that they had five minutes to disperse or they would be arrested. After five minutes had passed, police wagons arrived so that those demonstrators who had not dispersed could be

arrested. Demonstrators lined up and voluntarily entered the vans. Defendants Klose and Weissinger were among those arrested. Defendants were tried before a magistrate and convicted of criminal contempt for willful violation of the court's order.

Defendants' appeal to this court presents three grounds for overturning the convictions: (1) the magistrate lacked subject matter jurisdiction; (2) defendants were entitled to trial by jury; and (3) insufficient evidence to support the verdict.

■ All of these issues have been addressed by other courts in this district and by the court of appeals for the third circuit. In a recent opinion in another case dealing with the June 3 demonstration, *United States of America v. Gedraitis,* 690 F.2d 351 (3d Cir.1982), the court of appeals resolved in the government's favor the issues of the magistrates' jurisdiction to hear these cases and of the defendants' right to a jury trial.

As to the jurisdictional point, the court held that because all these cases were referred to magistrates by the district courts with the provision "that the potential penalties for such contempts do not exceed misdemeanors, as defined in 18 U.S.C. § 1," the cases fell within the magistrates' misdemeanor jurisdiction. *Id.* at 355. In addition, the court held that the forms signed by defendants were valid waivers of the right to be tried by a district court judge.

■ In considering the jury trial issue, the court ruled that the defendants were not entitled to a jury trial under 18 U.S.C. §§ 402 and 3691 for willfully disobeying the order of the district court because the injunction was entered in an action brought on behalf of the United States, and that the jury trial right provided by 42 U.S.C. § 2000h was inapplicable.

■ The only remaining issue before this court is sufficiency of the evidence. In determining the sufficiency of the evidence supporting the magistrate's verdict, the ap-

propriate standard is whether a rational trier of fact could conclude beyond a reasonable doubt that the defendants were guilty. *United States v. McQuilkin,* 673 F.2d 681, 688 (3d Cir.1982).

■ The *Gedraitis* opinion and the earlier *McQuilkin* opinion dealing with the June 3 demonstration set out the elements the government must prove as to each defendant. "[A] finding of criminal contempt based on disobedience of a court order is possible only where the alleged violator had notice of the order." *McQuilkin,* at 687. In *McQuilkin* and *Gedraitis,* photographs of the defendants in an area where they could have heard the marshal's announcement at a time shortly before the announcement was made were held sufficient to prove actual notice. The court of appeals also held the government's photographs to be sufficient evidence that defendants were in the prohibited area after they had received notice of the court's order.[1] *Gedraitis* at 356–57.

At defendants' trial, the government presented the same series of photographs of the June 3 demonstration as were used in *Gedraitis* and *McQuilkin.* The photographs were numbered sequentially. Photograph 6–47 shows the United States Marshal addressing the crowd over a bullhorn. The marshal testified that he informed the demonstrators that they were violating the court's order and that they had five minutes to disperse or they would be arrested. Record at 128–129.

Defendant Klose appears in photographs number 6–31, 6–43, 6–44, 6–46, and 6–48. In all these photographs except 6–31, Klose is in the prohibited area. He was therefore present in the crowd just before, 6–46, and immediately after, 6–48, the marshal's announcement. The magistrate did not believe Klose's testimony that he did not feel free to leave the prohibited area, Record at 232–33, but believed instead that Klose had volunteered for arrest. Credibility of wit-

---

1. In *Gedraitis,* the court also held that the fact of defendants' arrests at the site was support- ing evidence.

nesses is the province of the trier of fact. This finding of the magistrate and the photographs clearly furnish sufficient evidence to support the guilty verdict against defendant Klose.

The evidence against defendant Weissinger is not as persuasive. Weissinger appears only in photographs 6–31 and 6–48. In 6–31, Weissinger is shown behind the barricades in the Pantry Pride parking lot, the area permitted for demonstrations. Weissinger testified that he remained there until he entered the prohibited area just before his arrest. Record at 253–254. He appears in the prohibited area in photograph 6–48.

The significant question in Weissinger's case is whether he received actual notice of the court's order. The magistrate found that Weissinger was made aware of the order by the United States Marshal's bullhorn announcement, photograph 6–47.[2] Defendant raised the question whether he could have heard this announcement while in the Pantry Pride parking lot because of his distance from the marshal and because of crowd noise. It is unnecessary to determine the sufficiency of this specific finding, however, because the record provides other clearly sufficient evidence of actual notice.

The magistrate had before him, and I have also reviewed, a videotape taken by the Philadelphia Police Department, Exhibit G–3. The tape shows a crowd of people waiting to enter and entering police vans. The tape also includes a very audible warning to the crowd, made over a bullhorn, that those who did not wish to be arrested had to clear the streets. After adequate time to do so had passed for those wishing to clear the streets and avoid arrest, the tape then showed Weissinger voluntarily entering the police van. There was more time for Weissinger to exercise his option and leave the area than for others because he was the last person to be arrested.

Because the videotape provides sufficient evidence that the defendant had actual notice that remaining in the prohibited area would lead to arrest, I affirm the magistrate's entry of a guilty verdict.

---

**2.** The magistrate also found that Weissinger had notice of the order from several sources that the court in *Gedraitis* found inadequate to prove actual notice. *Id.* at 356.